The Honorable Bobby L. Glover State Senator Post Office Box 1 Carlisle, AR 72024-0001
Dear Senator Glover:
I am writing in response to your request for my opinion on the following questions, which you have submitted on behalf of the Mayor of England:
 1. Did the England Housing Authority have the authority to employ a Level 3 sex offender under state or federal laws?
 2. Does the City of England, or any other entity, have the authority to terminate the employment of such an individual? What recourse, if any, does the City of England have in this situation under state or federal laws?
In correspondence to you, the mayor provided the following background summary:
 Inquiries to state and local housing authority officials informed me that hiring provisions for employees have been revised in July of 2004. These provisions mandated that pre-employment background screening be performed on potential employees. Since the offender was hired prior to that date and our local Housing Authority Board of Commissioners approved the hiring of this individual, he is exempt from the provisions that were put in place in 2004 by the state. However, a copy of the England Housing Authority Personnel Policy of 1985 states that the housing authority was prohibited from hiring individuals who had been convicted of a felony (EHA Resolution # ____). Since the policy was done in the form of a resolution, an amendment would have been added sometime in the last twenty years to change the policy or a convicted felon could have never been hired. No changes in the personnel policy of the housing authority have been presented to the City of England and such a change might have warranted more deliberation.
RESPONSE
I am unable to answer these questions, whose answers turn on the application of a local contract and regulations whose application only local counsel acquainted with all the attendant circumstances could address. I am neither authorized nor equipped to undertake a factual inquiry of the sort that your questions invite. I can only conclude that no provision of state statutory law addresses the employment by a municipal housing authority of a convicted felon. Although I am unaware of any provision of federal statutory or regulatory law that would preclude such employment, you should consult with the Department of Housing and Urban Development regarding the possible application of federal law.
Question 1: Did the England Housing Authority have the authorityto employ a Level 3 sex offender under state or federal laws?
I am unable to answer this question, which raises issues of local policy based upon local ordinances and regulations that I am unable to review and construe. As my predecessors and I have noted on many occasions, this office is not well situated to decide factual issues or to construe local ordinances. See,e.g. Ark. Ops. Att'y. Gen. Nos. 2005-278; 2005-007; 2004-181; 2004-173; 2003-063; 2002-333; 2002-306; 2000-199; 99-287; 98-298; 97-071; 97-038. As stated in Opinion 2003-063:
 [T]he interpretation of local ordinances is a matter outside the domain of the Attorney General. The interpretation of such ordinances necessarily involves a determination of the intent of the city council, a factor that this office is not well situated to consider and address. It also requires a consideration of other factors of which this office is unaware that could reflect a particular intent on the part of the city council that is not apparent from the face of the ordinance. The awareness of such factors is a matter within the local domain, rather than the domain of this office. An interpretation of the legality of the specific ordinance that is the subject of your questions therefore must ultimately be handled locally, through the interested parties and their counsel, or through a medium that can consider local factual matters, such as a court.
These conclusions apply equally to any resolutions and policies crafted by a municipal housing authority.
The mayor notes in his correspondence to you that an applicant to a housing authority may be subject to a criminal background check upon the request of a public housing authority, A.C.A. §14-169-107 (Supp. 2005), and that public policy supports avoiding any possibility that a convicted felon might obtain access to such sensitive information. He further characterizes as a "double standard" barring convicted felons from residing within a housing authority property while allowing a convicted felon to work for the housing authority.
In addressing the mayor's concerns, I can only note that I have found no provisions of the Arkansas Code barring a municipal housing authority from employing a convicted felon. Rather, the Code expressly charges the local municipal housing authority with determining the qualifications for employment. Specifically, A.C.A. § 14-169-208(i)(1) (Repl. 1998) provides in pertinent part:
 An authority . . . may . . . employ a secretary, who shall be executive director, technical experts, and such other officers, agents, and employees, permanent and temporary, as it may require, and shall determine their qualifications, duties, and compensation.
The question of whether such background information might serve to disqualify an individual from employment with a housing authority is thus purely a matter for local determination.
Local counsel, following a review of all the pertinent facts, should review any pertinent standards and determine how, if at all, they apply to the situation described in your request. With respect to the possible application of federal law, this office normally issues opinion on matters of state law. Although I am unaware of any provision of federal law that would prohibit a housing authority from employing a convicted felon, the Department of Housing and Urban Development should be able to provide guidance on this issue.
Question 2: Does the City of England, or any other entity, havethe authority to terminate the employment of such an individual?What recourse, if any, does the City of England have in thissituation under state or federal laws?
Again, I am unable to answer these questions because I cannot undertake a factual inquiry into the terms of the particular individual's employment. Only local counsel acquainted with all of the pertinent circumstances, including the express terms of the individual's employment contract, would be in a position to advise the housing authority regarding its options. I can, however, opine that if the circumstances indicate that the employee at issue is subject to termination, only the housing authority itself will be authorized to exercise that option. A municipal housing authority is an independent "public body corporate and politic, exercising exclusively public and essential governmental functions," A.C.A. § 14-169-211 (Repl. 1998), and, as such, it will make its own, independent employment determinations. Although nothing in the statutes expressly addresses the termination of housing authority employees, as a general rule, absent any constitutional or statutory limitation thereon, the power to fire is incident to the power to hire.See 63A Am.Jur.2d Public Officers and Employees 221 (1984); 67 C.J.S. Officers and Public Employees 118 (1978); Ark. Ops. Att'y Gen. Nos. 2003-194; 1998-272; 1997-211; and 1993-221. As noted in my response to your previous question, a housing authority is expressly afforded the authority to hire employees pursuant to A.C.A. § 14-169-208(i)(1).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh